# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DENNIS VORHES, an individual,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 06-1130 |
| | ) |
| **MITTAL STEEL USA, INC., et al.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Pending before the Court is Defendants' Mittal Steel US, Inc. ("Mittal"), International Steel Group ("ISG"), and Pristine Resources' (collectively, "Defendants") Motion for Summary Judgment [18]. For the following reasons, said motion is **DENIED**.

### II.   FACTUAL BACKGROUND

Plaintiff Dennis Vorhees was severely injured in a dirtbike accident on Defendants' abandoned mine site (hereinafter "Mine 51") in Bentleyville and Ellsworth Boroughs in Washington County, PA on April 9, 2005. (Docket No. 20 at ¶1). Plaintiff drove his dirt bike over a blind cliff, and fell sixty feet into Pigeon Creek below. (Docket No. 20 at ¶1). It is alleged Defendants' negligence by way of the failure to guard or warn Plaintiff of a dangerous condition at Mine 51, described as a blind cliff, proximately caused his injuries. (Docket No. 1-2, ¶ 16). Plaintiff further alleges that this cliff is not visible from the approach area, that there are no warning or danger signs warning of the cliff, and that Plaintiff inadvertently drove his dirt bike over the cliff because he was unable to see the cliff and no signs warned him of such a danger. (Docket No. 1-2 at ¶ 9, 11).

It is undisputed that a similar accident occurred in 2000 at Mine 51 in which two cars drove over the cliff and landed in Pigeon Creek. (Docket No. 20 at ¶18). At the time of the 2000 accident, Mine 51 was owned by Beth Energy. After the accident, Beth Energy contracted with MineVironment to monitor Mine 51 and to place danger and warning signs on the property to prevent the occurrence of another such accident. (Docket No. 20 at ¶ 19). The Beth Energy employee responsible for Mine 51, Jay Hasbrouck, retired in 2003. (Docket No. 20 at ¶ 25). Thereafter, Larry Neff, Mr. Hasbrouck's former subordinate, took over his responsibility for Mine 51. (Docket No. 20 at ¶ 25).

The mine was later sold by Beth Energy to Defendants in April of 2003. (Docket No. 20 at ¶ 14, 25). MineVironment continued to provide its services to Defendants until November of 2003. Thereafter, the services afforded by MineVironment were terminated because Defendants determined that attempts to keep recreational users off of Mine 51 were futile. (Docket No. 20 at ¶ 19, 23). Larry Neff was responsible for Mine 51 when the accident involving Plaintiff occurred in April of 2005. (Docket No. 20 at ¶ 25).

Defendants have filed a Motion for Summary Judgment arguing that they are entitled to immunity from liability under the Pennsylvania Recreational Land and Water Use Act. (Docket No. 18 at ¶¶ 5-7.) They also contend that Pristine Resources, a subsidiary of Mittal and ISG, is the true owner of the property. (Docket No. 18 at ¶ 9.) To that end they maintain that the piercing the corporate veil doctrine is not applicable to hold Mittal or ISG liable for the injuries claimed by the Plaintiff. (Docket No. 18 at ¶ 11.)

### III. PROCEDURAL HISTORY

Plaintiff filed a complaint in the Court of Common Pleas of Allegheny County alleging

negligence against the Defendants on July 25, 2006. (Docket No. 1-2.)

Subsequently, on August 24, 2006, the complaint was removed to this Court based on diversity of citizenship under 28 U.S.C. § 1332. (Docket No. 1.)

On October 16, 2006, Judge Hardiman exempted this matter from this Court's Alternative Dispute Resolution Process, and consolidated the case, for discovery purposes only, with Civil Action No. 06-701, *Estate of David A. Creek, et. al. v. Mittal Steel USA, Inc., et. al.* The cases then proceeded through discovery.

On May 30, 2007, Defendants filed their Motion for Summary Judgment, (Docket No. 18.) to which, Plaintiff filed his Brief in Opposition to Defendant's Motion for Summary Judgment on July 30, 2007. (Docket No. 29.) Following same, on August 24, 2007, Defendants filed their Reply Brief in Support of their Motion for Summary Judgment. (Docket No. 35.) No sur-reply brief was filed by Plaintiff in response. The motion is ripe for disposition.

## IV. LEGAL STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

In evaluating the evidence, this Court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249. The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. *Horta v. Sullivan*, 4 F.2d 2 (1st Cir. 1993) (citing WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); *Pollack v. City of Newark,* 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957), *cert. denied*, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322-323. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its

pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## V.　DISCUSSION

In their Motion for Summary Judgment, Defendants argue that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law because: (1) they should be afforded immunity under the Pennsylvania Recreational Use of Land and Water Act; and (2) Pristine Resources and not Mittal Steel or ISG, is the sole owner of Mine 51, hence, Plaintiff cannot prove that the piercing the corporate veil doctrine is applicable to find Mittal Steel or ISG liable. (Docket No. 18 at ¶¶ 5, 10-11.) The Court will address each argument, in turn.

###　A.　Application of the Pennsylvania Recreational Use of Land and Water Act

Defendants argue that they are entitled to immunity under the Pennsylvania Recreational Use of Land and Water Act (the "Act"). The stated purpose of the Act is to "encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability." 68 P.S. § 477-1 (1966). The Act provides the following:

> Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

68 P.S. § 477-3 (1966). The Act is subject to certain exceptions contained in section 6 of the Act, which provides that:

> Nothing in this act limits in any way any liability which otherwise exists:
>
> (1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.
>
> (2) For injury suffered in any case where the owner of land charges

> the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

68 P.S. § 477-6 (1966). At issue in the instant matter is the interpretation of subsection (1) above as to the meaning of "wilful."[1]

Defendants, relying on a line of district court cases in Pennsylvania, argue that the standard of wilfullness under the Act requires a plaintiff to prove that the Defendants had "(1) actual knowledge of a danger;(2) that is not obvious to those entering the premises." *Flohr v. Pennsylvania Power & Light Co.*, 821 F.Supp. 301, 304 (E.D. Pa. 1993) (citing *Livingston v. Pennsylvania Power & Light Co.*, 609 F.Supp. 643, 649 (E.D. Pa. 1985), aff'd 72 F.2d 1029 (3d Cir. 1986); *See also DePatch v. U.S.*, No. CIV.A. 95-6698, 1996 WL 355355 at *3 (E.D. Pa. June 20, 1996) (unpublished), aff'd 111 F.3d 126 (3d Cir. 1997); *Blake v. U.S.*, No. Civ.A. 97-0807, 1998 WL 111802, at * 8 (E.D. Pa. February 6, 1998) (unpublished); *Anderson v. U.S.*, Civ. A. No. 87-1304, 1988 WL 17018, at * 3 (E.D. Pa. February 25, 1988) (unpublished); *Hinkle v. U.S.*, Civil Action No. 83-6003, 1985 WL 3090, at *3 (E.D.Pa. October 16, 1985); *Capriotti v. Bunnell*, 685 F.Supp. 462, 466 (M.D. Pa. 1988).

Plaintiff, however, relies on a Superior Court of Pennsylvania case holding that wilfullness under the Act requires not actual knowledge but the lesser "knew or should have known" standard

---

[1] Defendants assert that there is no evidence that their conduct was malicious. (Docket No. 19 at 11 n.1). No further argument is made by the Defendants as to the statutory meaning of "malicious," however, this issue need not be addressed by the Court at this time.

as outlined in the Restatement (Second) of Torts § 342[2] and as applied to gratuitous licensees under the common law in Pennsylvania. *Baran v. Pagnotti Enterprises, Inc.*, 402 Pa. Super 298, 304, 586 A.2d 978, 981 (Pa Super. 1991). However, in a later case, *Stanton v. Lackawanna Energy, Ltd.*, 820 A.2d 1256, 1263 (Pa. Super 2003) the Superior Court of Pennsylvania cited the actual knowledge standard to section 477-6. ("Pennsylvania's federal courts, applying RULWA section 6, have opined the "willfulness under § 477-6 contains two elements: (1) actual knowledge of a danger; [and] (2) that [the danger] is not obvious to those entering the premises." (quoting *Flohr,* 821 F.Supp. at 304)).

Further analysis indicates that the standard set forth for wilfulness in both *Baran* and *Flohr*, emanates from the same case, *Kopp v. R. S. Noonan, Inc.*, 385 Pa. 460, 463, 123 A.2d 429 (1956). In *Kopp*, the Supreme Court of Pennsylvania described the standard of care owed to gratuitous licensees at common law. To that end, the Court noted that wilfully requires that the possessor ***knows*** of a dangerous condition on its land, citing with authority the Restatement of Torts § 342.[3]

---

[2]
Section 342, Dangerous Conditions Known to Trespasser, provides that:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
> (a) the possessor ***knows or has reason to know*** of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
> (b) he fails to exercise reasonable care to make the condition safe, or warn the licensees of the condition and the risk involves, and
> (c) the licensees do not ***know or have reason to know*** of the condition and the risk involved.

RESTATEMENT (SECOND) OF TORTS § 342 (emphasis added).

[3]
The Restatement of Torts § 342 provides that:
> A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he (a) ***knows*** of the condition and realizes that it involves an

*Kopp*, 385 Pa. at 463 ("the possessor of premises is not liable to a gratuitous licensee under such circumstances except that he be guilty of wilful or wanton injury. The possessor of premises at most owes the duty of reasonable care to disclose [to the gratuitous licensees] dangerous conditions known to it [the possessor] and not likely to be discovered by him [the gratuitous licensee] or to make such conditions reasonably safe.") As stated above, *Baran* applied the standard of care owed to gratuitous licensees at common law, but cited the Restatement (Second) of Torts.

Accordingly, it appears that the divergence in the pertinent case law can be traced to the change of standards in the different versions of the Restatement during the time period between the Supreme Court's holding in *Kopp* and the Superior Court's ruling in *Baran*.

Despite this apparent conflict in authority, the Court need not decide the correct standard to impose liability under §477-6 at this time. Rather, for the purposes of this motion, the Court will look to the federal district court cases cited above and apply the actual knowledge standard to determine whether a material issue of fact exists as to whether Defendants acted "wilfully" under the Act. As such, Defendants must show that the admissible evidence in the record is insufficient for the Plaintiff to prove that Defendants had actual knowledge of the dangerous condition at trial.

Defendants maintain that despite the 2000 accident at Mine 51, the retirement of a key employee, the sale of the company since the accident, and the contracting of maintenance services at the site to MineVironment prevent the instant Plaintiff from proving that Defendants had actual

---

unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein.

RESTATEMENT OF TORTS § 342 (emphasis added).

knowledge of the alleged dangerous condition, and that they are entitled to judgment as a matter of law. Specifically, Defendants contend that Pristine Resources, through its supervisor, Larry Neff, did not have actual knowledge of the inherent danger at the cliff site at Mine 51 where Plaintiff's accident occurred.

In response, Plaintiff has produced evidence coupled with certain admissions by the Defendant, that challenges the contention that Defendants did not have actual knowledge of the dangerous condition at Mine 51. Jay Hasbrouck Jr., Mr. Neff's former supervisor (while both were employees at Beth Energy) was responsible for Mine 51. (Docket No. 20 at ¶¶ 12-13.) Mr. Hasbrouck had actual knowledge of the dangerous condition of the blind hill or cliff at Mine 51 after an accident occurred in 2000 in which two cars drove off the cliff in question. (Docket No. 27 at ¶ 7.) Mr. Hasbrouck and Mr. Neff discussed the accident sometime after the 2000 accident. (Docket No. 20 at ¶¶ 20-22.) Beth Energy, through Mr. Hasbrouck, ordered danger and warning signs to post on the property, to warn of the blind hill as well as other potentially dangerous obstacles. (Docket No. 27 at ¶ 8.) Mr. Hasbrouck testified that Mr. Neff personally ordered the danger and warning signs in 2000. (Docket No. 27 at ¶ 7.) Beth Energy then contracted with MineVironment to continue posting the warning signs and to monitor the recreational vehicle use at Mine 51. (Docket No. 27 at ¶ 8.)

Mr. Hasbrouck retired in early 2003, and Mr. Neff took over his responsibilities, including that of Mine 51. (Docket No. 20 at ¶ 25.) Beth Energy sold its assets to ISG in April 2003 and Mine 51 was thereafter deeded to Pristine Resources in May of 2003. After the sale, MineVironment continued to provide its services to the Defendants until November of 2003 when its contract was terminated. MineVironment reported directly to Mr. Neff during the time that he was responsible

9

for Mine 51. (Docket No. 28 at ¶ 12.) MineVironment also provided reports to Mr. Neff as well as pictures related to its services upon the termination of the contract. The MineVironment documents included reports describing the recreational vehicle use on the property and pictures of the approach to the blind hill. (Docket No. 27 at ¶¶ 9-10.) Defendants admit that when the contract was terminated, Mr. Neff also reviewed the file on Mine 51 and read the newspaper articles describing the 2000 accident. (Docket No. 20 at ¶ 20.) Mr. Neff testified that the contract was terminated with MineVironment because the efforts to keep such recreational activity off of Mine 51, as well as other properties, were futile. (Docket No. 27 at ¶ 11.) After the MineVironment contract was terminated, no warning signs were posted at Mine 51, including in the cliff area. (Docket No. 27 at ¶ 11.) Plaintiff's accident then occurred in April of 2005. (Docket No. 27 at ¶ 11.)

Interpreting the evidence in the light most favorable to the Plaintiff and drawing all reasonable inferences in his favor, as is required at this stage, the Court finds that genuine issues of material fact remain as to Defendants' actual knowledge of the alleged non-obvious dangerous condition at Mine 51. While Mr. Neff has testified that he had no such knowledge, a reasonable jury could find that Defendants did have knowledge based on the other evidence in the record. Further, issues pertaining to a party's knowledge of certain facts are factually intensive, require credibility determinations within the province of a jury and are generally not determined at the summary judgment stage. *See Metzger v. Osbeck*, 841 F.2d 518, 521 (3d Cir. 1988) ("a court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder.")

As genuine issues of material fact remain as to the knowledge of Defendants of the dangerous condition on Mine 51, the Defendants' Motion for Summary Judgment on that issue is DENIED.

B.  Piercing the Corporate Veil

In its motion, Defendants also argue that Pristine Resources is the true owner of Mine 51. As a result, Defendants contend that there is no basis for imposing liability on ISG and Mittal, and both are entitled to summary judgment. This part of Defendants' motion also is DENIED.

In support of their summary judgment claim, Defendants preemptively argue that Plaintiff cannot prove by way of piercing the corporate veil that either ISG or Mittal is liable. Plaintiff, however, did not assert liability against those Defendants premised on such theory in his Complaint,[4] but did respond to Defendants' motion by adopting a claim of piercing the corporate veil.

In Plaintiff's Complaint, he alleges that each Defendant entity, Pristine Resources, Mittal Steel and ISG, individually "owned and/or controlled" Mine 51. (Docket No. 1-2, ¶ 53, 72) The Third Circuit in *Pearson v. Component Technology Corp.*, 247 F.3d 471 (3d Cir. 2001),[5] held that, in addition to a piercing the corporate veil claim, a claimant could prove a parent corporation liable for actions of subsidiaries directly or under an agency theory. Specifically, the Third Circuit held that "parents may be 'directly' liable for their subsidiaries' actions when the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management, and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised

---

[4] Plaintiff's Complaint alleges negligence against each named Defendant in a separate count. (*See* Docket No. 1-2.)

[5] *Pearson* is also the case cited by Defendant to support its argument that Plaintiff cannot prove a piercing the corporate veil claim. (Docket No. 19 at 14.)

by a parent as an incident of ownership." *Pearson*, 247 F.3d at 486-487, 488 n. 5.

Here, Plaintiff has put forth deposition testimony of Mr. Neff which evidences control of Mine 51 by Mittal and/or ISG. In his deposition, Mr. Neff testified that he is responsible for Mine 51 but has been paid by Mittal Steel or ISG, not Pristine Resources. (Docket No. 29 at 19.) Mr. Neff also identified Keith Nagal as his boss and a Mittal Steel employee. (Docket No. 29 at 19-20.) Mittal Steel also paid for work to re-grade the cliff area after the accident to Mr. Vorhes. (Docket No. 29 at 19.)

Further, the Court takes judicial notice of the stipulation entered in the related case of *Estate of David A. Creek, et. al. v. Mittal Steel USA, Inc., et. al.,* Civil Action No. 06-701, Docket No. 59 (W.D. Pa. filed November 8, 2007). *See* Fed. R. Evid. 201(c). There, Defendants stipulate:

> 1. That Mittal Steel USA will be jointly and severally liable for any verdict or award in this case and in the event of a verdict or award entered solely against Pristine Resources will indemnify Pristine Resources provided, however, that Plaintiffs will be entitled to only a single recovery of any award or verdict.
>
> 2. That Larry Neff and Albert Gailey will be considered employees of Mittal Steel USA and/or Pristine Resources for purposes of this case only.

*Creek*, Civil Action No. 06-701, Docket No. 59 at ¶¶ 1-2. The Court acknowledges the attempt by Defendants to qualify the stipulation as applicable to only the *Creek* case. However, the Court believes that this notice of stipulated facts in *Creek* along with the above facts contined in Neff's deposition testimony raise genuine issues of material fact as to the ownership or control of Mine 51 by Defendants Mittal Steel and ISG.

Accordingly, ISG and Mittal Steel's motion for summary judgment on the grounds that

Pristine Resources is the sole owner of Mine 51 and on the further grounds that ISG and Mittal cannot be liable under a theory of piercing the corporate veil is DENIED.

## VI. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment [18] is hereby DENIED. The Court finds that genuine issues of material fact remain as to the Defendants' knowledge of the dangerous condition on Mine 51. Further, Defendants ISG and Mittal are not entitled to summary judgment as Plaintiff has raised sufficient material issues of fact as to the ownership of the subject property, to preclude the granting of summary judgment in their favor.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: March 24, 2008

cc/ecf: All counsel of record